UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------x
SHADY GABAL,

                              Plaintiff,

              -against-

SCOUTSEE INC., DENNIS KWON, and TOM KWON

                              Defendants.

------------------------------------------------------------x

18-CV-2236 (VSB) (OTW)

**REPORT & RECOMMENDATION**

**ONA T. WANG, United States Magistrate Judge:**

**To the Honorable Vernon S. Broderick, United States District Judge:**

**I.**    **Introduction**

Plaintiff entered a default against Defendants Tom Kwon and Scoutsee Inc. after they failed to respond to the Complaint. (ECF 23).[1] The matter was subsequently referred to me by Judge Broderick for inquest. For the reasons set forth below, I recommend that Plaintiff be awarded $48,314.64, plus additional interest to be calculated by the Clerk of Court.

**II.**    **Background**

Defendants hired Plaintiff in October 2016 as a software engineer for Scoutsee Inc. ("Scoutsee"). (Complaint ("Compl.") ¶ 12).[2] Plaintiff's salary with Scoutsee was $100,000 per

---

[1] Dennis Kwon separately reached a settlement with Plaintiff, which was approved by Judge Broderick as fair and reasonable under *Cheeks v. Freeport Pancake House, Inc.*, 796 F.3d 199 (2d Cir. 2015). (ECF 22).

[2] The facts are based on Plaintiff's allegations and evidentiary support. The allegations are accepted as true, and Plaintiff is "entitled to all reasonable inferences from the evidence offered," for purposes of its motion for default judgment. *Gray v. Proteus Sports & Racing Cars Ltd.*, No. 13-CV-8717 (JGK), 2014 WL 7330859, at *4 (S.D.N.Y. Dec. 23, 2014); *see also Transatlantic Marine Claims Agency, Inc. v. Ace Shipping Corp.*, 109 F.3d 105, 108 (2d Cir. 1997) ("It is, of course, ancient learning that a default judgment deems all the well-pleaded allegations in the pleadings to be admitted.").

year. (Compl. ¶ 14). Around the middle of May 2017, Scoutsee's CEO and CTO, Tom Kwon and Dennis Kwon, met with Plaintiff and informed him that due to financial difficulties, they would be unable to pay his salary past May 15, 2017 and that they would be unable to provide benefits from June onward. (Compl. ¶ 16). Despite this warning, Plaintiff continued to work at Scoutsee until September 1, 2017 on the promise by Tom and Dennis Kwon that he would ultimately be repaid for time worked once Scoutsee obtained additional funding. (Compl. ¶¶ 17-19). Tom and Dennis Kwon also promised Plaintiff that they would reimburse Plaintiff for any out-of-pocket health insurance premium payments. (Compl. ¶ 18). From May 15, 2017 through September 1, 2017, Plaintiff was not paid any salary by Scoutsee and was never reimbursed for his health insurance premium payments. (Compl. ¶¶ 21-32). Around August 30, 2017, Plaintiff threatened to resign if he was not given his backpay. (Compl. ¶ 31). When Plaintiff failed to receive any payment on September 1, 2017, he resigned from Scoutsee. (Compl. ¶ 32).

Plaintiff brought this case on March 13, 2018 against Scoutsee, Tom Kwon, and Dennis Kwon for breach of contract, violations of the Fair Labor Standards Act ("FLSA"), and violations of the New York Labor Law ("NYLL"). (Compl. ¶¶ 37-55). On May 25, 2018, Plaintiff obtained a Clerk's Certificate of Default against Scoutsee and Tom Kwon following their failure to respond to the complaint. (ECF 15). Upon Plaintiff's motion, Judge Broderick entered a default against both Scoutsee and Tom Kwon on liability on December 19, 2018 and subsequently referred the matter to me for an inquest for damages and attorney's fees. (ECF 23). After Plaintiff submitted his initial inquest papers, I requested additional briefing to support the claimed damages figures

and held an inquest hearing on June 19, 2019 at which I heard testimony from Plaintiff. (ECF 29).

III. **Discussion**

    A. **Inquest Standard**

Even though a complaint's factual allegations are presumed true in the event of a default, damages allegations are not entitled to the same presumption. *Greyhound Exhibitgroup, Inc. v. E.L.U.L. Realty Corp.*, 973 F.2d 155, 158 (2d Cir. 1992). Plaintiff must still supply an evidentiary basis for the specific damages amount sought. *Santana v. Latino Express Restaurants, Inc.*, 198 F. Supp. 3d 285, 292 (S.D.N.Y. 2016). Where the defendants fail, however, to provide any records of wages or hours, Plaintiff's "recollection and estimates of hours worked are presumed to be correct." *Chen v. Jenna Lane, Inc.*, 30 F. Supp. 2d 622, 624 (S.D.N.Y. 1998).

    B. **Jurisdiction**

This Court has subject-matter jurisdiction over Plaintiff's FLSA claims based on federal question jurisdiction. *See* 28 U.S.C. § 1331; 29 U.S.C. § 216. Because of the Court's original jurisdiction over the FLSA claims, this Court may also exercise supplemental jurisdiction over Plaintiff's NYLL state law claims which cover the same unpaid wages injury. *See* 28 U.S.C. § 1367(a) (permitting supplemental jurisdiction over "claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy").

This Court has personal jurisdiction over any defendant "who is subject to the jurisdiction of a court of general jurisdiction in the state where the district court is located," here New York. *See* Fed. R. Civ. P. 4 (k)(1)(A). Under New York law, a court has personal

jurisdiction over a foreign party if that party "transacts any business within the state" or "commits a tortious act within the state." *See* N.Y. C.P.L.R. § 302(a). Plaintiff alleges that Scoutsee is incorporated under the laws of Delaware but conducts business in the state of New York. (Compl. ¶¶ 6-7). At the inquest, Plaintiff testified that Scoutsee's headquarters was located in Manhattan. (Inquest Tr. at 11:3-4). Plaintiff also submitted an affidavit of service, showing that Scoutsee was properly served through service of the summons and complaint on Scoutsee's managing agent, Tom Kwon. (ECF 6). Therefore, this Court has personal jurisdiction over Scoutsee. *See Daimler AG v. Bauman*, 571 U.S. 117, 137 (2014) (noting that a corporation's principal place of business is a "paradigm" basis for general jurisdiction).

Defendant Tom Kwon, Scoutsee's CEO, does not appear to be a resident of New York, as he was personally served with the summons and complaint in New Jersey. (ECF 5). Personal jurisdiction does not exist over an individual corporate officer merely because the court has personal jurisdiction over the officer's employer. *See Kinetic Instruments, Inc. v. Lares*, 802 F. Supp. 976, 984 (S.D.N.Y. 1992). Specific personal jurisdiction can exist over a corporate officer, however, where the corporation's activities were performed for the benefit of the individual defendant, the activities were performed with the individual defendant's knowledge and consent, and the individual defendant "exercised some control over the corporation." *See Beatie and Osborn LLP v. Patriot Scientific Corp.*, 431 F. Supp. 2d 367, 389 (S.D.N.Y. 2006). Here, Defendant Tom Kwon was the CEO and co-owner of Scoutsee, signed Plaintiff's employment contract on behalf of Scoutsee,[3] ECF 31-1, and repeatedly told Plaintiff that although he would

---

[3] The employment contract also notes that the contract cannot be altered in any way without the CEO's consent, here Tom Kwon. (ECF 31-1).

4

not be paid, Scoutsee would ultimately pay back wages once external funding was procured. (Compl. ¶¶ 8, 16-19, 21, 23). This suffices to show that Defendant Tom Kwon personally participated in and benefited from deferring paying wages to Plaintiff, thereby justifying the exercise of personal jurisdiction over Tom Kwon. *See Karabu Corp. v. Gitner*, 16 F. Supp. 2d 319, 323 (S.D.N.Y. 1998) (looking at whether an officer is the "primary actor" in the tortious activity or merely an uninvolved employee).

### C. Liability

Judge Broderick issued a default against Defendants Scoutsee and Tom Kwon on the issue of liability. (ECF 23). Plaintiff adequately pleaded a prima facie case of FLSA minimum wage violations and NYLL violations by alleging that after he entered into an employment contract with Scoutsee, he was not paid any wages for a period of roughly four months for work performed. (Compl. ¶¶ 10, 33).

### D. Damages

#### 1. Wage Damages

Although Plaintiff has brought claims under both the FLSA and NYLL, Plaintiff has elected to pursue damages under the NYLL, which potentially offers a higher amount. (Inquest Tr. at 2:11-24). New York Labor Law §191[4] requires that employees be "paid the wages earned in

---

[4] New York Labor Law § 191 does not apply to workers who are "employed in a bona fide executive, administrative or professional capacity whose earnings are in excess of nine hundred dollars a week." N.Y.L.L. § 190(7). Under New York law, working in a "professional capacity" requires use of "knowledge of an advanced type in a field of science or learning customarily acquired by a prolonged course of specialized intellectual instruction," and whose work either requires discretion or is "predominantly intellectual" such that the work product "cannot be standardized." N.Y. Comp. Codes R. & Regs. tit. 12, § 142-2.14(c)(4)(iii)(a)-(c). Although Plaintiff's role as a software engineer likely requires intellectual non-standardized work, Plaintiff's earnings of zero places him under the $900 per week threshold for professionals. *See Gordon v. Kaleida Health*, 299 F.R.D. 380, 389 (W.D.N.Y. 2014) (calculating whether one qualifies for the salary exemption based only on the period that forms the basis of the claim).

accordance with the agreed terms of employment." N.Y.L.L. §191(1-d). Whereas the FLSA only permits recovery of unpaid wages at the minimum wage rate, courts have used §191 to authorize recovery of the total amount of unpaid wages even where it exceeds the minimum wage. *See Calle v. Yoneles Enterprises, Inc.*, No. 16-CV-1008 (NGG) (RLM), 2017 WL 6942652, at *7 (E.D.N.Y. Oct. 24, 2017), *adopted by* 2018 WL 401269 (E.D.N.Y. Jan. 12, 2018); *see also Dreyfuss v. eTelecare Glob. Solutions-US, Inc.*, No. 08-CV-1115 (RJS), 2010 WL 4058143, at *5 (S.D.N.Y. Sept. 30, 2010) (noting that the NYLL allows "greater than ordinary protection to an employee's right to wages" where "an employer wrongfully withholds earned wages"). *But see Gurung v. Malhotra*, 851 F. Supp. 2d 583, 590 (S.D.N.Y. 2012) (choosing to award damages under breach of contract claim because it was unclear whether unpaid wages could be recovered under §191). Plaintiff's reading of §191 is supported by the Second Circuit's suggestion in the unpublished decision *Goldberg v. Jacquet* that §191 is the appropriate vehicle to compensate for "[w]holesale withholding of wages." *See Goldberg v. Jacquet*, 667 Fed. Appx. 313, 314 n. 1 (2d Cir. 2016) (summary order). In the absence of a clear prohibition against use of §191 in this manner and Defendants' failure to challenge this point due to their failure to appear, I will calculate damages under §191 as claimed by Plaintiff.

Plaintiff entered into a written employment contract with Scoutsee, signed by both Defendant Tom Kwon and Plaintiff, under which Plaintiff was offered a base salary of $100,000 per year, paid in bi-monthly installments, to work as a software engineer for Scoutsee. (ECF 31-1 at 1). Plaintiff's May 2017 paystub reflects this agreement, stating that Plaintiff's pay rate was $100,000 annually. (ECF 27-2). At the inquest hearing, Plaintiff testified that he was not

paid any salary for the period worked from May 15, 2017 through September 1, 2017, which would be a breach of the employment contract. (*See* Inquest Tr. at 8:16-25).

Using the contractual rate of $100,000 per year, Plaintiff should have been paid $29,589.04 for work performed during that period ($100,000 x [108/365 days]).[5] Plaintiff acknowledges that his earlier settlement payment of $11,000 with Defendant Dennis Kwon should be applied to the unpaid wages claim. (ECF 27 ¶ 19). Therefore, with the offset of Defendant Dennis Kwon's payment, I recommend that Plaintiff be awarded **$18,589.04** in unpaid wages ($29,589.04-$11,000.00).[6]

2. Liquidated Damages

Plaintiff further seeks liquidated damages in relation to his unpaid wages claim under the NYLL. (Compl. ¶ 46). Liquidated damages of 100% of the owed wages are appropriate for an unpaid wages claim "unless the employer proves a good faith basis to believe that its underpayment of wages was in compliance with the law." N.Y.L.L. § 198 (1-a). Being in default, Defendants have not provided any good faith justification for failing to pay Plaintiff his wages. Nor is it clear that there could be any good faith basis to conclude that failure to pay *any* wages is in conformity with the law. Accordingly, Plaintiff is entitled to an additional **$18,589.04** in liquidated damages.

---

[5] Plaintiff offered a different damages amount of $29,166.67 because he used months/year for his pro rata calculation instead of days/year. (ECF 31 at 2). I recommend using days/year as it is more precise than Plaintiff's approximation of the number of months worked.

[6] Although Plaintiff also has a minimum wage claim under the FLSA and NYLL, Plaintiff has elected to pursue the greater recovery of his full unpaid wages under NYLL §191. (Inquest Tr. at 2:11-24).

3. <u>Breach of Contract</u>[7]

Plaintiff brings a breach of contract claim for failure to provide reimbursement for out-of-pocket health insurance premiums paid from June-August 2017. (Compl. ¶¶ 18, 21). A breach of contract under New York law requires the following elements: (1) the existence of a contract; (2) performance by Plaintiff; (3) breach by Defendant; and (4) damages caused to Plaintiff by the breach. *See Diesel Props S.r.l. v. Greystone Bus. Credit II LLC*, 631 F.3d 42, 52 (2d Cir. 2011). Plaintiff alleges that Defendants notified him that after May 2017, his benefits would stop but that he would be later reimbursed for any paid out-of-pocket health insurance premiums once Scoutsee received additional funding. (Compl. ¶¶ 16, 18). Unlike the employment contract, Plaintiff alleges that this was initially an oral promise and later confirmed via text message. (Compl. ¶¶ 18, 23). In the text message, Plaintiff states that he paid $650.76 for COBRA health insurance for July 2017, to which Defendant Dennis Kwon purportedly responded that this would be the last out-of-pocket payment needed and that "[y]ou'll be reimbursed." (ECF 27-3).

The text message's assertion that Plaintiff's monthly COBRA payments were $650.76 was not disputed by Defendants in the text conversation or subsequently challenged.[8]

---

[7] To the extent that Plaintiff pleaded that the unpaid wages also constituted a breach of his employment contract, I recommend that Plaintiff only be awarded those damages under the NYLL, as requested by Plaintiff, because any recovery on a contract claim for unpaid wages would be duplicative. *See Belizaire v. RAV Investigative and Sec. Services Ltd.*, 61 F. Supp. 3d 336, 354 n. 15 (S.D.N.Y. 2014).

[8] Plaintiff asserted in his initial statement of damages that the insurance premiums were $680.76 per month. (ECF 27 ¶ 14). Plaintiff later corrected that amount to $650.76, as stated in the text message, in his supplemental damages submission. (ECF 31 at 2).

Accordingly, Plaintiff should be awarded his out-of-pocket payments for health insurance for June-August 2017 in the amount of **$1,952.28** ($650.76 x 3 months).[9]

    4.  <u>Notice Damages</u>

Plaintiff brings a claim under the New York Labor Law for failure to provide proper wage notices as required by § 195(1)-(3). (Compl. ¶¶ 48-50). Under that law, employers are required to provide a written notice containing, *inter alia*, the rate of pay, the designated pay day, and the employer's name and address. N.Y.L.L. § 195(1)(a). Plaintiff, however, appears to have dropped that claim, as it is absent from both his initial statement of damages and his supplementary letter of proposed damages calculations. (ECF 27, 31). It was also not raised at the inquest hearing. Moreover, it appears that such a claim may be directly contradicted by Plaintiff's submission of both his employment contract and pay stub, which contains the information required in New York Labor Law §195(1)(a). (ECF 27-2, 31-1). Accordingly, I recommend that no damages be awarded for this claim.

    E.  **<u>Prejudgment Interest</u>**

Because Plaintiff prevailed on his NYLL and breach of contract claims, Plaintiff can also recover pre-judgment interest. *See* N.Y.L.L. § 198 (1-a); N.Y. C.P.L.R. § 5001. Prejudgment interest is intended to "compensate a plaintiff for lost use of money owed" and therefore does not apply to liquidated damages. *See Tackie v. Keff Enter. LLC*, No. 14-CV-2074 (JPO), 2014 WL 4626229, at *5 (S.D.N.Y. Sept. 16, 2014). New York law provides that interest shall be calculated

---

[9] In his supplemental damages submission, ECF 31, Plaintiff also adds in liquidated damages for the breach of contract claim without providing any explanation why such damages are available. *See Iqbal v. Teva Pharm. USA, Inc.*, No. 16-CV-3464 (VB), 2017 WL 6729190, at *8 (S.D.N.Y. Dec. 28, 2017) (noting NYLL's liquidated damages provision applies to wage claims under the NYLL, not to common-law breach of contract claims). Notably, Plaintiff did not include such liquidated damages in his initial statement of damages either. Accordingly, I recommend not awarding liquidated damages for the breach of contract.

at nine percent per year. *See* N.Y. C.P.L.R. § 5004. Where, as here, the damages were incurred at various times, interest would run from either "the date it was incurred or upon all of the damages from a single reasonable intermediate date." *See* N.Y. C.P.L.R. § 5001(b).

As Plaintiff describes in his proposed calculations, the damages arose from the failure to pay from May 15, 2017 through August 31, 2017, for which the median date is July 8, 2017. (ECF 31). Using that date, Plaintiff should be awarded prejudgment interest of nine percent per annum, *i.e.*, $5.06 per day, from July 8, 2017 through June 21, 2019, the date of Plaintiff's filing his supplemental inquest papers. ([$1,952.28 + $18,589.04] x 0.09 x [1/365]). The total prejudgment interest would thus be **$3,607.78** ($5.06/day x 713 days), in addition to $5.06 per day from June 22, 2019 through the date of judgment.[10]

### F. Attorneys' Fees and Costs

Plaintiff's prevailing on his NYLL claim further entitles him to an award of attorney's fees. N.Y.L.L. § 198 (1-a). The Court has "considerable discretion" in determining a reasonable fee. *See Matusick v. Erie County Water Auth.*, 757 F.3d 31, 64 (2d Cir. 2014). "Reasonableness" entails examining both the attorney's hourly rate and the hours expended on the matter. *Millea v. Metro-North R. Co.*, 658 F.3d 154, 166 (2d Cir. 2011).

The Court can draw upon its own knowledge as to market rates as well as rely on submissions from the parties. *Adorno v. Port Auth.*, 685 F. Supp. 2d 507, 511-12 (S.D.N.Y. 2010). Relevant factors include the attorney's experience in the field, what similar attorneys in the district charge, and what other clients pay for similar services. *Arbor Hill Concerned Citizens*

---

[10] Although Plaintiff is taking an offset of actual damages based on the settlement with Defendant Dennis Kwon, he is still claiming prejudgment interest on the total pre-offset damages figure. (ECF 27). At the inquest hearing, Plaintiff conceded that he was amenable to the Court taking prejudgment interest only on the actual awarded damages amount, as he admitted that there was no case law supporting his position. (Inquest Tr. at 13:18-25).

*Neighborhood Ass'n v. County of Albany*, 522 F.3d 182, 191 (2d Cir. 2008). Plaintiff's counsel, Mr. Rose, submitted his billing records on this matter, in which he charged $7,500 based on his rate of $375 per hour. (ECF 27-5). Although Mr. Rose indicated that he has substantial experience in litigation, he does not cite how long he has been practicing or whether he has had substantial experience with similar wage-and-hour cases. (ECF 13 at 3). Nevertheless, Mr. Rose's hourly rate of $375 is in line with what has been approved for him in the past, and I find no reason to recommend a reduction. *See Echevarria v. Insight Medical, P.C.*, 102 F. Supp. 3d 511, 519 (S.D.N.Y. 2015) (reducing hourly rate to $375 because Mr. Rose only had roughly seven years of experience at that time).

In assessing reasonableness of hours spent, the Court examines whether a "reasonable attorney would have engaged in similar time expenditures." *Grant v. Martinez*, 973 F.2d 96, 99 (2d Cir. 1992). Where the amount billed is excessive, the Court "should reduce the stated hours accordingly." *Cocoletzi v. Fat Sal's Pizza II, Corp.*, No. 15-CV-2696 (CM) (DF), 2019 WL 92456, at *11 (S.D.N.Y. Jan. 3, 2019). Mr. Rose billed 20 hours on this matter, with the majority of it spent communicating with opposing counsel regarding settlement. (ECF 27-5).

While attorney's fees for pre-litigation tasks in preparation for litigation, *e.g.*, settlement talks, can be recoverable, it is inappropriate to award attorney's fees for work spent on other defendants. *See Arclightz & Films Pvt. Ltd. v. Video Palace Inc.*, 303 F. Supp. 2d 356, 364 (S.D.N.Y. 2003). Mr. Rose's billing records show that he spent 4.3 hours of the billed time exclusively on negotiating the terms of and drafting papers regarding Dennis Kwon's settlement. (ECF 27-5). Additionally, Mr. Rose block-billed 2 hours for filing a request for a clerk's certificate of default for Defendant Tom Kwon and for drafting *Cheeks* approval papers

11

for Dennis Kwon's settlement. (*Id*.) Because a request for a clerk's entry of default is a brief one-page document, the majority of those two hours undoubtedly were spent drafting the *Cheeks* approval papers for the settlement with Dennis Kwon. Finding 0.3 hours a reasonable estimate of time to draft a request for a clerk's certificate of default, I recommend excluding the time spent on Dennis Kwon, which results in 14 hours of billed time (20 – [4.3+1.7]) for the defendants that are the subject of this application. Using Mr. Rose's rate of $375 per hour, this would result in an attorney's fees award of $5,250.

Plaintiff also requests recovery of service and filing costs, totaling $701.50. Finding these costs to be reasonable, the Court recommends that Plaintiff be awarded his costs, for a total attorney's fees and costs of **$5,951.50** ($5,250 attorney's fees + $701.50 costs).

### IV.    Joint & Several Liability

In his statement of damages, Plaintiff requests that Defendants Tom Kwon and Scoutsee be held jointly and severally liable for the amount owed to Plaintiff. (ECF 27 at 5). Although the complaint does not contain such a request, the complaint alleges that Defendant Tom Kwon was the CEO of Scoutsee and had an "ownership interest" in Scoutsee. (Compl. ¶ 8). Additionally, the complaint alleges that Defendants collectively failed to pay Plaintiff his agreed-upon wages. (Compl. ¶¶ 35-36). As they have had a default judgment entered against them as to liability, Defendants have not, and cannot, challenge Plaintiff's request. *See Ting Yao Lin v. Hayashi Ya II, Inc.*, No. 08-CV-6071 (SAS) (AJP), 2009 WL 289653, at *8 (S.D.N.Y. Jan. 30, 2009), *adopted by* 2009 WL 513371 (S.D.N.Y. Feb. 27, 2009). Accordingly, I recommend that Defendants Tom Kwon and Scoutsee be held jointly and severally liable.

**V.      Conclusion**

For the foregoing reasons, I recommend that the Court award judgment for Plaintiff against Defendants Tom Kwon and Scoutsee Inc. for the amount of **$48,689.64**, plus additional prejudgment interest to be calculated by the Clerk from June 22, 2019 through the date of judgment at a rate of $5.06 per day.

**VI.      Objections**

In accordance with 28 U.S.C. § 636(b)(1) and Fed. R. Civ. P. 72(b), the parties shall have fourteen (14) days (including weekends and holidays) from receipt of this Report to file written objections. *See also* FED. R. CIV. P. 6 (allowing three (3) additional days for service by mail). A party may respond to any objections within fourteen (14) days after being served. Such objections, and any responses to objections, shall be filed with the Clerk of Court, United States Courthouse, 500 Pearl Street, Room 200, New York, New York 10007 and addressed to the Honorable Vernon S. Broderick, United States District Judge. Any requests for an extension of time for filing objections must be directed to Judge Broderick.

**FAILURE TO FILE OBJECTIONS WITHIN FOURTEEN (14) DAYS WILL RESULT IN A WAIVER OF OBJECTIONS AND WILL PRECLUDE APPELLATE REVIEW.** (*See Thomas v. Arn*, 474 U.S. 140, 155 (1985); *IUE AFL-CIO Pension Fund v. Herrmann*, 9 F.3d 1049, 1054 (2d Cir. 1993); *Frank v. Johnson*, 968 F.2d 298, 300 (2d Cir. 1992); *Wesolek v. Canadair Ltd.*, 838 F.2d 55, 58 (2d Cir. 1988); *McCarthy v. Manson*, 714 F.2d 234, 237–38 (2d Cir. 1983)). Plaintiff shall serve a copy of

this Report & Recommendation on Defendants and file a proof of service on the docket.

Respectfully submitted,

                                                                    *s/ Ona T. Wang*

Dated: October 25, 2019                                       **Ona T. Wang**
        New York, New York                       United States Magistrate Judge